IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| I'M STILL STANDING COMMUNITY CORPORATION, et al., | * | |
| | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. GLR-19-2784 |
| | * | |
| STEWART MOVING AND STORAGE, | * | |
| | * | |
| Defendant. | * | |

\*\*\*

## MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiffs I'm Still Standing Community Corporation ("ISSCC") and Lawana Perkins's Motion for Partial Summary Judgment as to the Applicability of Defendant's Liability Cap (ECF No. 53). The Motion is ripe for disposition and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021).[1] For the reasons outlined below, the Court will deny the Motion.

### I.   BACKGROUND

**A.   Factual Background**

This action arises from Plaintiffs' allegation that Defendant Stewart Moving and Storage's ("Stewart") tortious and improper storage of Plaintiffs' property caused Plaintiffs to incur damages in excess of $500,000. (See Compl. ¶¶ 7–10, 16–17, 20, 40, ECF No. 2).

---

[1] Plaintiffs have requested a hearing on their Motion. Having determined that no hearing is necessary to understand the issues underlying the Motion, the Court will deny the request.

According to Plaintiffs, they entered into a contract with Stewart in December 2015, the terms of which required Stewart to move, store, and relocate Plaintiffs' property. (Id. ¶ 7). The property included conference room tables, cubicles, filing cabinets, sofas, chairs, mirrors, art, telephone equipment, speakers, intercom systems, computers, rugs, and other office equipment and furniture (the "Property"). (Id. ¶ 16). On April 28, 2016, Stewart moved Plaintiffs' property into a storage unit. (Bill of Lading at 1–2, ECF No. 54-3).[2]

On July 7, 2018, Stewart arrived at Plaintiff's new location to deliver the Property. (Compl. ¶ 19). Stewart's President, Stefan Cordeiro, states that Plaintiffs accepted delivery of one of the two trailers containing the Property. (Aff. Stefan Cordeiro ["Cordeiro Aff."] ¶ 10, ECF No. 54-1; see also Bill of Lading at 1). Plaintiffs rejected the second trailer, however, upon discovering the items inside had sustained water damage. (Cordeiro Aff. ¶ 10; Compl. ¶ 20).

The instant Motion revolves around a potential contractual cap on the damages to which Plaintiffs are entitled. There are two contracts at issue in this case. The first is a sales contract, entitled "Proposal for Moving Services," which the parties appear to have fully executed on December 9, 2015 (the "Sales Contract"). (See Sales Contract at 1, 10, ECF No. 54-2). The Sales Contract sets forth the scope and cost of the project and provides certain assurances regarding the work Stewart will provide. (Id. at 6–7). It also contains language limiting Stewart's liability, including a provision stating that Stewart's "maximum liability is limited [to] .60 per pound per article for loss or damage due to

---

[2] Citations to exhibit page numbers refer to the pagination assigned by the Court's Case Management and Electronic Case Files ("CM/ECF") system.

2

external cause." (Id. at 9). The second contract is a Bill of Lading,[3] which Plaintiff Lawana Perkins executed on April 28, 2016, the day of the move. (Bill of Lading at 1–2).[4] Under the terms of the Bill of Lading, the parties agree that "[t]he Agreed or declared value of the property is hereby specifically stated by the customer (shipper) and confirmed by their signature hereon to be NOT exceeding 60 cents per pound per article unless specifically excepted." (Id.). Neither party appears to have included such an exception specifying a value for the Property above sixty cents per pound.

Multiple Stewart employees appear to concede that the Property was not weighed prior to the move. (Robert Wright Dep. ["Wright Dep."] at 27:2–13, ECF No. 53-7; Leeroy Williams Dep. ["Williams Dep."] at 31:1–14, ECF No. 53-8). Cordeiro asserts that Stewart's Director of Loss Prevention, Robert Wright, generally uses a "table of weights" to calculate a valuation of damaged property. (Stefan Cordeiro Dep. ["Cordeiro Dep."] at 27:1–18, 44:10–45:1, ECF Nos. 53-6, 54-5). Thus, Cordeiro understood that Wright "did a comprehensive tabulation of the loss and then used the table to come up with a valuation." (Id. at 29:7–13). Wright conceded in his deposition that it is "industry practice" to calculate the weight for purposes of the liability cap by using the American Moving and Storage

---

[3] "A bill of lading records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage." Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 18–19 (2004).

[4] The first page of the electronic filing found at ECF No. 54-3 is a difficult-to-read, but apparently fully executed version of the Bill of Lading. The second page of the document is a more legible but unsigned version of the document. Thus, contrary to Plaintiffs' assertion that Stewart has "failed to establish and cannot establish that [Perkins] ever saw that portion of the [Bill of Lading] let alone signed it," (Pls.' Mot. Partial Summ. J. Applicability Def.'s Liability Cap at 2, ECF No. 53), there is at the very least a dispute of fact as to whether Perkins acknowledged the liability cap in the Bill of Lading.

Association ("AMSA") table of weights and "apply[ing] the standard weight when the actual weight of the item is unavailable." (Wright Dep. at 30:16–31:3). In this case, however, Wright did not "apply any valuation"—and, therefore, did not use AMSA tables to calculate the weight of the Property—because he "surrendered [his] rights as a fiduciary agent" to the insurance adjuster. (Id. at 42:4–19). Neither party states in their briefs whether an insurance adjuster ultimately provided a valuation for the Property.

Stewart notes that the maximum weight load for the rejected trailer was 20,000 pounds. (Cordeiro Aff. ¶ 12). Accordingly, Cordeiro suggests that the maximum liability amount for the damaged property contained in the second trailer is $12,000, i.e., 20,000 pounds multiplied by $0.60 per pound. (Id. ¶ 13). Cordeiro notes that the items from the rejected trailer are currently located in a Stewart warehouse and remain available for weighing. (Id. ¶ 14).

**B.    Procedural History**

Plaintiffs filed suit against Stewart in the Circuit Court for Baltimore City on August 7, 2019. (ECF No. 2). Plaintiffs' four-count Complaint alleges: Trover and Conversion – Wrongful Taking (Count I); Trover and Conversion – Wrongful Detention (Count II); Detinue (Count III); and Negligence (Count IV). (Compl. ¶¶ 41–77). Plaintiffs seek compensatory damages, interest and costs, and injunctive relief. (Id. at 11, 13). Stewart filed its Answer on September 20, 2019. (ECF No. 4). That same day, Stewart removed the lawsuit to this Court. (ECF No. 1).

4

On June 14, 2021, following discovery, Plaintiffs filed the instant Motion for Partial Summary Judgment. (ECF No. 53). On June 29, 2021, Stewart filed an Opposition. (ECF No. 54). Plaintiffs have not filed a Reply.

## II.     DISCUSSION

### A.     Standard of Review

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation

or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Id. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (quoting Anderson, 477 U.S. at 247).

**B.  Analysis**

Plaintiffs argue that the liability cap set forth in the Sales Contract and the Bill of Lading does not apply. In Maryland, the liability of a carrier such as Stewart "may be limited by a term in the bill of lading . . . that the carrier's liability may not exceed a value stated in the bill." Md. Code Ann., Com. Law § 7-309(b). Several federal circuit courts have enforced bills of lading even where those bills functioned to substantially undervalue the damaged articles. See, e.g., Rational Software Corp. v. Sterling Corp., 393 F.3d 276,

276–77 (1st Cir. 2005) (affirming $924 award for computer equipment worth $250,000 "after finding that the parties had agreed to limit [defendant's] liability to sixty cents per pound"); Ins. Co. of N. Am. v. NNR Aircargo Serv. (USA), Inc., 201 F.3d 1111, 1112 (9th Cir. 2000) (affirming decision limiting carrier liability to $50 based on agreed-upon limitation of liability at $50 per shipment where value of stolen property was over $250,000); Calvin Klein Ltd. v. Trylon Trucking Corp., 892 F.2d 191, 192 (2d Cir. 1989) (enforcing limitation of liability of $50 per shipment where total value of lost shipment was $150,000).

According to Plaintiffs, Stewart "does not have any evidence to support the applicability of the liability cap." (Pls.' Mot. Partial Summ. J. Applicability Def.'s Liability Cap ["Mot."] at 6, ECF No. 53). Plaintiffs argue that because the contractual liability cap is based on the weight of the Property, andStewart did not physically weigh the Property or compute the weight using industry standard methods, Stewart cannot seek to enforce the liability cap from the Bill of Lading. (Id.). In other words, Plaintiffs argue, because Stewart has not provided a weight for the purposes of the contractual liability cap, it may not rely on the Bill of Lading to limit its liability. Plaintiffs cite no statute, regulation, or case law in support of this position.

At bottom, the Court is unpersuaded. Perkins appears to have fully executed the Bill of Lading. (See Bill of Lading at 1). As explained above, bills of lading like the one at issue in this case are generally enforceable. It appears that the Property remains available to be weighed and that an inventory of the Property is also available for a valuation according to AMSA tables. Stewart has even proposed using the maximum load weight for the damaged

7

trailer, thereby giving Plaintiffs the benefit of their apparent failure to calculate the weight of the Property prior to the move. The Court thus sees no reason that Stewart's failure to weigh the Property before the move should nullify the applicability of the contractual liability cap. Accordingly, the Court will deny Plaintiffs' Motion.

### III. CONCLUSION

For the foregoing reasons, the Court will deny Plaintiffs' Motion for Partial Summary Judgment as to the Applicability of Defendant's Liability Cap (ECF No. 53). A separate Order follows.

Entered this 20th day of January, 2022.

                                                           /s/
                                        George L. Russell, III
                                        United States District Judge